# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT BIG STONE GAP, VA
FILED

APR 2 8 2006

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

**JAMES HOLBROOK,** )
    Plaintiff, )
 )
v. )    Civil Action No. 2:05cv00019
 )    **MEMORANDUM OPINION**
 )
 )
**LIBERTY LIFE ASSURANCE** )
**CO.,** )
    Defendant. )    By: GLEN M. WILLIAMS
 )    Senior United States District Judge

This suit was brought before this court by the plaintiff, James Holbrook, ("Holbrook"), to enforce his rights under the Employment Retirement Income Security Act of 1974, as amended, ("ERISA") 29 U.S.C. § 1001 *et seq.* Holbrook was a participant in an employee welfare benefit plan, ("the plan"),which the defendant, Liberty Life Assurance Co., ("Liberty"), was the plan provider and administrator. The plan is governed by ERISA. Holbrook brought this action to recover plan benefits under a long term disability provision contained in the plan. This court has jurisdiction to hear this matter under 29 U.S.C. § 1132(f) (West 2003).

## I. Procedural History & Facts

Holbrook was employed by El Paso Coal Corporation, ("El Paso"), as a surface supply clerk, which was classified as medium work. While working for El Paso,

Case 2:05-cv-00019-GMW-PMS  Document 21  Filed 04/28/06  Page 1 of 8  Pageid#: 127

Holbrook became a plan participant under group policy number GF3-890-485377-01. The Plan was an employee benefits plan within the meaning of 29 U.S.C. § 1002. The Plan was issued by Liberty to El Paso, and it covered El Paso employees. Under the terms of the Plan, benefits were payable to participants upon Liberty's receipt of proof that a covered person was disabled due to injury or sickness and was under the regular attendance of a physician. In accordance with the terms of the policy, "disability" was defined as follows:

> If the Covered Person is eligible for the 12 Month Own Occupation Benefit, "Disability" or "Disabled" means during the Elimination Period and the next 12 months of Disability the Covered Person is unable to perform all of the material and substantial duties of his occupation on an Active Employment basis because of an Injury or Sickness; and After 12 months of benefits have been paid, the Covered Person is unable to perform, with reasonable continuity, all of the material and substantial duties of his own or any other occupation for which he is or becomes reasonablely fitted by training, education, experience, age and physical and mental capacity.

"Covered Person" meant an "Employee insured under this policy." Liberty was granted discretionary authority under the terms of the Plan to construe the terms and benefit eligibility. Holbrook last worked for El Paso on August 25, 2002, after he was forced to retire because he became disabled due to severe back problems, chronic neck pain, cervical spondylosis and status post two separate spinal fusions.

Holbrook submitted his initial claim for long term disability benefits on February 3, 2003. Liberty approved Holbrook's claim on June 13, 2003, and awarded

-2-

long term disability benefits. On February 9, 2004, Liberty informed Holbrook, by letter, that his disability benefits would be discontinued starting February 21, 2004. Holbrook appealed Liberty's determination on June 30, 2004. By letter dated November 22, 2004, Liberty informed Holbrook that based on his vocational assessment, other gainful occupations existed which he could perform; therefore, it was denying his appeal.

Dr. Jim Brasfield, M.D., Holbrook's neurosurgeon, filled out a Functional Capacities Form for Liberty on May 5, 2003. Dr. Brasfield found that Holbrook had work limitations of not lifting items weighing more than 40 pounds and no overhead lifting. These limitations were confirmed by a registered nurse, who also reviewed Holbrook's file for Liberty.

On or about July 15, 2003, Liberty had a Transferable Skills Analysis and Wage Data report, ("TSA") prepared regarding Holbrook. The analysis found that Holbrook had transferable skills within the coal mining industry which would allow him to work as small product bench assembler, gate guard or greeter. These occupational alternatives were sedentary to light in physical demand and fell within Dr. Brasfield's work limitations that he had placed on Holbrook.

## II. Analysis

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is

-3-

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from those facts in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Nguyen v. CNA Corp.*, 44 F.3d 234, 237 (4th Cir. 1995); *Miltier v. Beorn*, 896 F.2d 848, 850 (4th Cir. 1990); *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364-65 (4th Cir. 1985); *Cole v. Cole*, 633 F.2d 1083, 1092 (4th Cir. 1980). The plaintiff is entitled to have the credibility of all his evidence presumed. *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990). The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The opposing party must demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. *Anderson*, 477 U.S. at 248. A mere scintilla of evidence supporting the case is insufficient. *Anderson*, 477 U.S. at 248.

"A federal court's ability to review a discretionary decision of the administrator of an employee benefit plan is significantly limited." *Elliot v. Sara Lee Corp.*, 190 F.3d 601, 605 (4th Cir. 1999). "[A] denial of benefits challenged under [ERISA] is to be reviewed under a *de novo* standard unless the benefits plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits

-4-

or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). When the plan confers discretionary authority, "the court must not disturb the administrator's decision if it is reasonable, even if the court itself would have reached a different conclusion." *Haley v. Paul Revere Life Ins. Co.,* 77 F.3d 84, 89 (4th Cir. 1996). *See also, Makar v. Health Care Corp.,* 872 F.2d 80, 83 (4th Cir. 1989) ("Congress intended plan fiduciaries not the federal courts, to have primary responsibility for claims processing.") In the present case, the policy expressly establishes Liberty's "authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility" under it. *See e.g., Thomas v. Liberty Life Ass. Co. of Boston,* 226 F.Supp. 2d 735, 742 (D. Md. 2002). However, where a claims administrator also pays the benefits at issue, courts apply a "modified abuse of discretion standard":

> The district court should uphold the plan administrator's decision if the decision was reasonable; and the court should weigh the conflict of interest as a factor in analyzing the reasonableness of the decision. Under the abuse of discretion standard, the plan administrator's decision is reasonable if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.

*Berstein v. Capitalcare Inc.,* 70 F.3d 783, 788 (4th Cir. 1995.) In the present case, since Liberty both administered the claim and paid the benefits, this Court will apply the modified abuse of discretion standard when reviewing Liberty's decision to deny Holbrook benefits.

Case 2:05-cv-00019-GMW-PMS   Document 21   Filed 04/28/06   Page 5 of 8   Pageid#: 131

Holbrook argues that Liberty erred by denying his claim for long-term benefits. Specifically, Holbrook argues that Liberty did not consider the new evidence that he submitted after his initial denial and that Liberty erroneously relied on the opinion of a non-treating, non-examining physician when it denied his benefits claim.

In making its long-term benefits determination regarding Holbrook, Liberty had a TSA report prepared. The TSA found that Holbrook had transferable skills within the coal industry such as small product bench assembly, gate guard and greeter. These alternative occupations, which the TSA found Holbrook capable of performing, were in the sedentary to light physical demand category and within the work restrictions placed on Holbrook by his treating physician, Dr. Brasfield, who determined that Holbrook could work, but could not exceed lifting items weighing 40 pounds or perform overhead work. A registered nurse, who Liberty had review Holbrook's file also confirmed Dr. Brasfield's work restrictions.

Liberty also had a Labor Market Survey form prepared by Worksource International Inc., ("Worksource"), which determined the number of jobs available in Virginia, Tennessee and Kentucky for the occupations of production assembler, greeter, cashier, information clerk, mail clerk and cafeteria attendant. Worksource determined that positions existed in the geographical search area, which met Holbrook's limitations and restrictions of lifting no items weighing more than 40 pounds and no overhead lifting.

Liberty further had Dr. Vernon Mark, M.D., who was a Board Certified in Neurosurgery, review Holbrook's medical history. Dr. Mark concluded that

Case 2:05-cv-00019-GMW-PMS   Document 21   Filed 04/28/06   Page 6 of 8   Pageid#: 132

Holbrook was, indeed, incapable of performing his previous job with El Paso and Holbrook did have the limiting factors of being unable to perform work which required lifting items weighting more than 40 pounds and overhead lifting. However, Dr. Mark also concluded that in light of the work restriction placed on Holbrook by Dr. Brasfield, there were jobs that Holbrook was capable of performing.

A Physical Work Performance Evaluation Summary, dated October 10, 2005, was requested by Liberty. The evaluation results further substantiated Liberty's decision and the medical opinions previously elicited by Liberty that Holbrook was capable of performing jobs that did not require him to lift items weighing more than 40 pounds and overhead lifting. According to the evaluation, Holbrook was capable of performing physical work at the light level, as defined by the U.S. Department of Labor in the Dictionary of Occupational Titles. It further found that Holbrook was capable of sustaining a light level of work for an eight-hour day.

While the Holbrook did submit new evidence to Liberty in an attempt to prove he could not work, the evidence submitted contained no new medical information. The record is devoid of any new evidence which would counter or further enlarge Dr. Brasfield's work restrictions that he placed on Holbrook of not lifting items weighing more than 40 pounds and no overhead lifting. There is not any new evidence that would refute the determinations of Dr. Brasfield, Dr. Mark and the registered nurse all who reviewed Holbrook's file. It is clear from the record that Liberty engaged in a reasonable and principled process and relied on many sources both treating and non-treating when making the determination that Holbrook could perform work that is within the limitations that his treating physician placed upon him. Therefore, this

-7-

court finds that Liberty's decision to deny Holbrook long-term disability benefits was not an abuse of discretion and was supported by substantial evidence. This court will sustain Liberty's motion for summary judgment and an appropriate order will be so entered.

DATED: This _28th_ day of ~~March~~ April 2006.

_____

SENIOR UNITED STATES DISTRICT JUDGE

Case 2:05-cv-00019-GMW-PMS   Document 21   Filed 04/28/06   Page 8 of 8   Pageid#: 134